IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EVA M. KEISER,                                No. C05-02310 MJJ

        Plaintiff,                      **ORDER RE MOTIONS TO DISMISS**

  v.

LAKE COUNTY SUPERIOR COURT, *et al.*,

        Defendants.
_____/

Pending before the Court are: (1) Defendants Wiley Price & Radulovich, LLP ("WPR") and Barbara Armanino's Motion to Dismiss (Doc. #11); (2) Defendant County of Lakes's "Rule 12(b)(6) Motion for Failure to State a Claim" (Doc. #17); and (3) Defendants William Jaynes and the Superior Court of California's Motion to Dismiss (Doc. #20). Plaintiff *pro per* Eva Keiser has filed Oppositions in response to each of the pending Motions (Docs. ##23, 24, 25), and Defendants have filed Replies[1] (Docs. #26 (County Reply), #27 (Mr. James and Superior Court), #28 (WPR and Ms. Armanino).) The Court now rules as follows.

**I.      Legal Standard - Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face

_____

[1]The County has filed a Notice of Joinder in Defendants WPR and Ms. Armanino's Motion. (Doc. #16.)

1   of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

2   Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or

3   failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta*

4   *Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d

5   696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

6   Further, dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of

7   facts in support of a claim. *See Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990).   In

8   considering a 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as

9   true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234

10  F.3d 428, 435 (9th Cir. 2000).

11  **II.      Plaintiff's Allegations**

12         Plaintiff filed her Complaint against Defendants on June 7, 2005. (Doc. #1.)  The material

13  allegations, taken as true and construed in the light most favorable to Plaintiff, are summarized as

14  follows.[2]

15         In October 1994, Plaintiff was hired on a 900-hour contract basis with the Superior Court of

16  California, County of Lake.  Later, in February 2005, Plaintiff obtained a permanent position as a

17  County Court Clerk.  In 2000, Plaintiff applied for a competitive selection position offered by the

18  County's Local Agency Merit System, and was selected for the position of judicial secretary.  In early

19  2001, in addition to her judicial secretary position, Plaintiff was appointed to a Courthouse Safety

20  Officer position.  Additionally, beginning in 2001, and again in 2002, Plaintiff was appointed as Grand

21  Jury Commissioner for the Superior Court, County of Lake.

22         Plaintiff alleges that in 2002, Court Manager, Barbara Mallinen, informed Plaintiff that her office

23  area would be used as an office lounge/break area for court staff.  Plaintiff opposed the change, claiming

24  it was intrusive and disruptive to her work area.  Ms. Mallinen responded that the change was necessary

25  to monitor all conversations.  Plaintiff, however, avers that the change was "an attempt to 'spy' on the

26  _____

27         [2]As discussed more fully at oral argument on Defendants' Motions, because of the lack of
    structure in Plaintiff's Complaint, and Plaintiff's failure to specifically identify which of the Defendants
    she claims acted in specific situations, it is difficult to discern the allegations supporting Plaintiff's
28  claims.  In this Order, the Court has summarized the material allegations supporting Plaintiff's claims
    as best it can.

United States District Court
For the Northern District of California

1    activities of Plaintiff and the Grand Jury."

2        Plaintiff alleges that in January 2002, she "began experiencing and documenting an escalation

3    of harassment directed at [her], namely a probate secretary, Doe."  Plaintiff claims that the probate

4    secretary challenged Plaintiff's "by the book" procedures and called Plaintiff profanities.  As a result,

5    Plaintiff complained to Mr. William Jaynes, the Court Executive Officer,[3] and Ms. Mallinen.  Neither

6    took any action.  Plaintiff alleges that, "[d]uring the next four months harassment against Plaintiff

7    escalated in the form of work procedure sabotage (changing procedures without cause or necessity),

8    increase in work load (from coworker's backlog by order of court manager), name calling, subordinates

9    without any authority giving Plaintiff orders, ultimatums over requested sick leave, pointed emails, and

10    disparate treatment by manager in front of coworkers."  (*Id.* at ¶ 22.)

11        In 2002, following the September 11 terrorist attacks, the County Safety Council appointed

12    Plaintiff to the position of Courthouse Building Evacuation Coordinator.  Plaintiff alleges that around

13    that time the courthouse was under alert status and, pursuant to orders from the State Office of

14    Emergency Services, she had to evacuate the courthouse as part of emergency preparation drills.

15    According to Plaintiff, "[t]hese drills were highly resented by Court Management [] as it gave access

16    and authority to Plaintiff to order anyone from the building and search without prior notice, as well as,

17    cite anyone refusing to cooperate."  In particular, Plaintiff claims that Ms. Mallinen "let Plaintiff know,

18    in no uncertain terms, how much she resented having to take orders from Plaintiff."  She also alleges

19    that court management failed or refused to report safety incidents and would delay notifying Plaintiff

20    about emergency situations.

21        Subsequently, in May 2003, Plaintiff was assigned the responsibility of coordinating court

22    reporters and interpreters in five departments.  She alleges that Ms. Mallinen repeatedly told her to

23    conceal unequal wages, treatment, and reimbursement rates of overtime and mileage among the court

24    reporters.  Because Plaintiff suspected that these procedures were illegal and violated wage and labor

25    laws, she refused to comply.  Plaintiff further alleges that she "believed that these unfair labor practices

26    were wide spread within the rank of the non[-]merit system employees and began to organize these

27    employees in an effort to standardize their pay under equal pay for equal work standards."  In response

28

_____

[3]Mr. Jaynes became the Court Executive Officer in October 2002.

United States District Court

For the Northern District of California

to these efforts, Plaintiff alleges that the court management[4] advised employees that they should "be careful with whom they had lunch." According to Plaintiff, her efforts "to standardize the wages of court reporters was protected and presented an obstacle to the ensuing labor negotiation of the Defendants."

In June 2003, Plaintiff continued to advocate on behalf of the court employees, and in anticipation of the implementation of the Trial Court Employment Protection and Governance Act ("TCEPGA"), assisted in establishing a non-profit 501(c)(3) charitable organization, pursuant to California Government Code § 71632.

On September 23, 2003, Plaintiff received a disciplinary notice seeking her termination on the ground that she was one day late in scheduling a second fingerprinting for a background check. On September 26, 2003, Plaintiff filed a grievance with Lake County, but the Lake County Personnel Director informed Plaintiff that she had no right to grievance through the County. Plaintiff then retained counsel to defend against the disciplinary action. "Plaintiff alleges that Defendants' act in serving notice of adverse action five days before the mandated implementation of the TCEPGA was a pretext to prevent Plaintiff from utilizing the protection provision of retained rights and status upon implementation of the TCEPGA."

On September 28, 2003, the TCEPGA went into effect. Plaintiff alleges that, "[i]t was in and about this time that Plaintiff became aware of the efforts by Defendants to reclassify Plaintiff to make her status in the confidential unit an excluded position, and suspected a plan to combine that unit with the management bargaining unit." Plaintiff opposed the reclassification, but was not offered a transfer because she was facing a disciplinary charge.

On November 12, 2003, Plaintiff claims that the Defendants attempted to use the disciplinary proceedings to convince her that she had no protection under the TCEPGA because she was an excluded employee under the TCEPGA. On November 25, 2003, Plaintiff prevailed at the disciplinary hearing, and all charges against her were dismissed.

Thereafter, on December 4, 2003, Plaintiff alleges that a union representative approached her

---

[4]Plaintiff fails to identify which of the Defendants comprise "court management" or who among the Defendants made this statement.

4

and asked her to sign a document. Plaintiff signed the document, but after realizing that it was a loyalty oath for labor relations, withdrew her signature. She alleges that her refusal to sign was a protected activity.

Plaintiff alleges that throughout December 2003 and January 2004, she continued to experience further acts of hostility and harassment from court management and other subordinate workers. She claims that this hostility and harassment escalated every time she expressed her dissatisfaction over her suspected placement. At the end of 2004, Plaintiff began to inquire about transferring to another position.

On February 3, 2004, Plaintiff received a disciplinary notice indicating that she had allegedly committed fraud in securing employment with the court. At this time, security escorted Plaintiff out of the building and took her keys. Plaintiff believes that Defendants "conspired and violated Labor Code § 432.7 to bring this action against Plaintiff in an effort to prevent her defecting from the newly formed management bargaining group that was being used to exclude Plaintiff from her retained rights through [the court's] implementation of the TCEPGA." Thereafter, a disciplinary hearing was held, which resulted in Plaintiff's discharge. After Plaintiff appealed, her employment was reinstated, and she returned to work on May 25, 2004. However, Plaintiff did not receive her back wages of approximately $6,000; she therefore appealed. Plaintiff alleges that Defendants held these wages as a penalty for engaging in the protected activity of advocating that an agency shop fee of unrepresented objectors should be allowed to paid to a 501(c)(3) non-profit organization of an employee's choice.

On May 5, 2004, Plaintiff accepted Defendant's[5] reinstatement benefits package. She states that, as an act of good faith, she did not file any claim against Defendants, but did appeal the wage taking by writ. On May 25, 2004, Plaintiff returned to work in accordance with the reinstatement order.[6] At that time, she received another disciplinary notice terminating her employment based on job performance. It was at this point that Plaintiff discovered that Ms. Mallinen and the probate secretary had raided

_____

[5] As previously noted, throughout her Complaint, Plaintiff repeatedly refers to "Defendant" and "Defendants," generally, without specifying which of the named Defendants committed the action.

[6] It is unclear whether Plaintiff returned to work as a result of the alleged "reinstatement package" or because Plaintiff appealed her termination and prevailed at the hearing. (*See* Compl. at ¶ ¶ 33-35.) Plaintiff alleges that both led to her returning to work on May 25, 2004.

1    Plaintiff's office, and that Defendants had no intention of allowing her to return to work.  Security then

2    escorted Plaintiff out of the building and took her keys.  Plaintiff asserts that the motivation for this

3    action "was based on bias and prejudice against Plaintiff's gender and esteemed career status."

4        On May 28, 2004, June 15, 2004, and June 18, 2004, Plaintiff wrote former presiding Judge

5    David Herrick, and requested that he remove Mr. Jaynes from his position as CEO.  Plaintiff alleges

6    that, on July 1, 2004, Mr. Jaynes "stepped aside rather than defend against Plaintiff's charge of bias and

7    prejudice."[7]  In an effort to appeal her termination, Plaintiff contacted the court to obtain the procedures

8    for the selection of an impartial hearing officer under the court policies and the TCEPGA.  On July 1,

9    2004, Plaintiff received a letter from the court indicating that, based on her classification, she was not

10   entitled to a evidentiary hearing.  On July 30, 2004, Plaintiff appealed the decision of discharge.  The

11   court referred Plaintiff's appeal to WPR,[8] which the court previously retained as counsel in Plaintiff's

12   wage appeal.

13       On August 30, 2004, Plaintiff filed an unfair practice charge with the Public Employment

14   Relations Board ("PERB").  Plaintiff claims that after she filed her charge, WPR contacted her to

15   propose submitting her claim to arbitration.  Plaintiff rejected WPR's proposal, and submitted requests

16   for discovery.  On February 14, 2005, Plaintiff claims that WPR wrote her, stating that "Defendants"

17   would make no further effort to provide a hearing.

18       On February 28, 2005, Plaintiff requested reinstatement to a court position that was being

19   advertised.  On March 2, 2005, Mr. Jaynes rejected Plaintiff's request, citing the third adverse

20   employment action.  Plaintiff thereafter filed an appeal with the PERB for an evidentiary hearing, which

21   Plaintiff states is under review by an administrative law judge.

22       Based on the foregoing events, Plaintiff alleges that "[f]rom January 2003 to present, [she] has

23   suffered retaliation and deprivation of her fundamentally vested right of employment." (Compl. at ¶ 50.)

24   She states that, "[s]he has been harassed, perjured, conspired against, humiliated, deceived, defrauded,

25   insulted, defamed, libeled, slandered, exposed to emotional and physical distress, ridiculed, suffered bias

26

27       [7]The Court is unclear what Plaintiff means by "stepp[ing] aside."

28       [8]Plaintiff alleges that Wiley, Price & Radulovich is a contracted Employment and Labor
     Relations Service Provider for the court.

1   and prejudice against her gender, privacy invaded, [experienced] disparate treatment, and held against

2   her will in a pattern of perpetual disciplinary discharge procedures which ultimately amount[ed] to [the]

3   constructive discharge of her employment on September 23, 2003, February 3, 2004, May 25, 2004, and

4   July 30, 2004." (*Id.*)

5       As a result, Plaintiff asserts the following claims against Defendants: (1) violation of her

6   constitutional rights (42 U.S.C. § 1983); (2) refusal to prevent interference with deprivation of

7   constitutional rights (42 U.S.C. § 1986); (3) age discrimination (29 U.S.C. § 623); (4) retaliation for

8   political activity (Labor Code § 1101 and § 1105); (5) intentional misrepresentation; (6) breach of

9   contract; (7) breach of covenant of good faith and fair dealing; (8) defamation; (9) discharge in violation

10  of public policy; and (10) intentional infliction of emotional distress.  Each of the Defendants has moved

11  to dismiss Plaintiff's Complaint on the ground that Plaintiff has failed to state any claim upon which this

12  Court may grant relief.

13  **III.    Discussion**

14      **A.    Preemption under the Trial Court Employment Protection and Governance Act**

15      Defendants first urge the Court to dismiss Plaintiff's claims because under the TCEPGA,[9] the

16  PERB has exclusive jurisdiction over disputes regarding wages, hours, and terms and conditions of

17  employment.  Particularly, Defendants argue that Article 3 of the Act provides:

18          A complaint alleging any violation of this article or of any rules and
            regulation adopted by a trial court pursuant to Section 71636 shall be
19          processed as an unfair practice charge by the [PERB].  The initial
            determination as to whether the charge of unfair practice is justified and,
20          if so, the appropriate remedy necessary to effectuate the purposes of this
            article, shall be a matter within the exclusive jurisdiction of the board.

21
22  Cal. Gov't Code § 71639.1(c).  Based on this provision, Defendants argue that "the Act requires that

23  complaints by trial court employees alleging unfair labor practices must be presented *only* to PERB."

    Thus, Defendants advance that, to the extent Plaintiff alleges she was treated unfairly because she
24
    engaged in protected labor-related and/or union-related activities, this Court lacks jurisdiction to
25
    adjudicate those matters because such claims are within PERB's exclusive jurisdiction.
26
27      In support, Defendants cite *El Rancho Unified School District v. National Education Association,*

28
            _____

            [9] California Government Code §§ 71600 *et seq.*

United States District Court
For the Northern District of California

33 Cal. 3d 946 (Cal. 1983).  In that case, the California Supreme Court addressed whether the PERB had exclusive jurisdiction over a school district's state court tort action for damages resulting from a teachers' strike led by four employee organizations - none of which had been recognized as the exclusive representative of the district's teachers under the Education Employment Relations Act ("EERA").  *Id.* at 948.  To determine whether the district's claims were preempted, the court first assessed whether the activity complained of arguably constituted an unfair practice under the EERA. On this factor, the court found that at least two theories supported the conclusion that the unions' strike was prohibited under EERA's unfair practice provisions.  The court then proceeded to analyze whether the controversy presented to the state court was identical to or different from that which the district could have brought before the PERB.  The court found that, if presented to the PERB, the issue would have been whether the strike was unlawful because it violated a section of the EERA.  Similarly, in the state trial court action, the district was challenging the legality of the strike, which required the Court to examine the strike under the EERA.  The court therefore concluded that the controversy presented in both forums was the same.  Accordingly, the court held that the EERA divested the trial court of jurisdiction to adjudicate the district's complaint, and the district was restricted to litigating its claims before the PERB.

Here, Defendants argue that Plaintiff's claims are based on essentially the same underlying conduct as that which she alleged in her PERB charge, or which she could have alleged in a PERB charge, and are therefore preempted.  Defendants proffer that Plaintiff has alleged: (1) that her "activity to standardize the wages of court reporters was protected" (Compl. at ¶ 23); (2) that she engaged in "protected activity regarding working conditions and right to choice of representation" by Superior Court employees (*Id.* at ¶ 24); (3) that Defendants' act of serving her with a disciplinary notice was a "pretext to prevent" her from the protections to which she was purportedly entitled under the Act (*Id.* at ¶ 27); (4) that she complained about her placement in the management bargaining unit (*Id.*); (5) that her refusal to sign a union "signature document" was a "protected activity" (*Id.* at ¶ 30); (6) that she suffered "hostility and harassment" by Superior Court employees because her concerns about her "placement in management" (*Id.* at ¶ 31); (7) that she was subjected to discipline "in an effort to prevent her from defecting from the newly formed management bargaining group" (*Id.* at ¶ 32); (8) that she

8

1    suffered wage loss during her disciplinary suspension "as a form of penalty for engaging in protected

2    activity" (*Id.* at ¶ ¶ 33-34); (9) that because she was allegedly denied an "evidentiary due process

3    hearing" following her termination, she filed an unfair practice charge with PERB (*Id.* at ¶¶ 40-41); and

4    (10) that her challenge of the Superior Court's policies "adopted in plaintiff's absence" resulted in

5    adverse employment action (*i.e.*, her termination) (*Id.* at ¶ 43).  (Doc. #20 at 5.)

6         While the Court agrees with Defendants that Plaintiff previously asserted similar claims to the

7    PERB, Defendants have failed to cite any authority indicating that the TCEPGA precludes Plaintiff from

8    concurrently or subsequently bringing federal claims based on the same conduct underlying her PERB

9    charge.  In *El Rancho School District*, the Supreme Court held that the plaintiffs could not seek damages

10   in state court based on state law tort claims because the claims fell within the scope of the EERA, and

11   were therefore within the PERB's exclusive jurisdiction.  Here, in contrast, Plaintiff is asserting claims

12   alleging that the various Defendants acted to deprive her of her federally-protected constitutional rights

13   and discriminated against her in violation of federal law.  While the conduct supporting her claims is

14   the same as that alleged in her charge filed with the PERB, Defendants have failed to cite any authority,

15   and the Court has found none, indicating that the TCEPGA or any similar statute preempts an

16   individual's civil rights claims under federal law.  Absent citation to such authority, the Court declines

17   to find that Plaintiff is precluded from bringing her federal claims in this lawsuit.

18        Nor does it appear that any of Plaintiff's state law claims, at least as currently plead, fall within

19   the ambit of the TCEPGA.  As indicated above, the TCEPGA vests exclusive jurisdiction over disputes

20   concerning wages, hours, and terms and conditions of employment in the PERB.  While Plaintiff's

21   allegations surely rest, in part, on her union-related activities, her claims for retaliation, intentional

22   misrepresentation, breach of contract, breach of covenant of good faith and fair dealing, defamation,

23   discharge in violation of public policy, and intentional infliction of emotional distress claims are

24   premised on conduct and theories which exceed the wages, hours, and terms and conditions of Plaintiff's

25   employment.  However, because Plaintiff's Complaint is difficult to decipher, and the true nature of

26   Plaintiff's claims may only be distilled after discovery, the Court will deny Defendants' Motion to

27   Dismiss Plaintiff's state law claims based on TCEPGA-preemption without prejudice.  Accordingly, the

28   Court turns to Defendants' alternate arguments.

United States District Court
For the Northern District of California

9

**United States District Court**
For the Northern District of California

**B.      Plaintiff's Federal Claims**

As detailed above, Plaintiff has alleged three claims arising under federal law: a § 1983 claim; a §1986 claim; and a claim under the Age Discrimination in Employment Act ("ADEA").  Because the Court's subject matter jurisdiction hinges on the presence of these claims, the Court turns to them first.

**1.      Section 1983 claim**

In her First Cause of Action, Plaintiff asserts a claim pursuant to Section 1983 for deprivation of her constitutional rights.[10]  Specifically, Plaintiff alleges that, beginning on June 30, 2003, and continuing through July 30, 2004, she "began exercising her rights to freedom of speech and association by publicly voicing her and other employee's [sic] rights and entitlements under the Trial Court Employment Protection and Governance Act," by meeting with other employees during lunch and by phoning employees after work "to secure representation of an employees association or union of their choice."  As a result of these efforts, Plaintiff alleges that on February 3, 2004, and again on May 25, 2004, she was "wrongfully locked out of her office and removed from her government job."  Thus, Plaintiff avers that "Defendant(s)[] intentionally deprived [her], and other employees, [of] the rights of free speech and association to prevent Plaintiff's ability to exercise a protected activity in securing employment representation, rights, and protection afforded by the [TCEPGA]."  She alleges that, "Defendants' [] conduct of seeking removal by unfounded disciplinary actions was pretextual and in violation of the First Amendment of the United States."

Additionally, Plaintiff alleges that Defendants promised to reinstate her employment on May 25, 2004, but "immediately deprived Plaintiff of her fundamentally vested right of employment absent countervailing state interest of overriding significance in violation of their own policies, and the Fourteenth Amendment of the United States Constitution."  She alleges that from June 2004, through July 2005, "Defendants refused to afford her the opportunity to be heard by denying Plaintiff the right to be heard orally at a meaningful time and manner."  Similarly, she alleges that, she "was denied the opportunity to be heard before she was deprived of her fundamentally vested right of employment, and was discharged by a hearing officer who by [g]overnment [s]tatute was prohibited from making such

---

[10]"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48, (1988).

1   decision."

2       Based on these actions, Plaintiff charges that Defendants have violated her rights under the

3   United States and California Constitutions, including her rights to equal protection of the laws; right to

4   due process; and her rights of free speech and association under the First Amendment.

5       Each of the Defendants has moved to dismiss Plaintiff's Section 1983 claim. The Court will

6   assesses each of their challenges, in turn.

7                           **a)    The County**

8       The County moves to dismiss Plaintiff's Section 1983 claim on the ground that Plaintiff has

9   failed to allege any "state action" by the County that deprived her of a constitutional right. Rather, the

10  County argues that the only actions that Plaintiff has alleged relate to the disciplinary measures taken

11  against her and the termination of her employment. According to the County, because it neither

12  disciplined nor terminated Plaintiff's employment, Plaintiff has failed to allege any County conduct

13  amounting to a civil rights violation under Section 1983.

14      In response, Plaintiff contends that she has alleged that on September 26, 2003, she filed for

15  grievance with the County personnel director, who told her that she had no right to grievance. Because

16  the County would not process her grievance, Plaintiff argues she was forced to proceed with the *"Skelly*

17  hearing" before the PERB. Thus, Plaintiff claims that the County deprived her of her due process rights.

18      The County, however, argues that Plaintiff has not alleged that she was employed by the County,

19  and thus has not pled any basis for a right to a grievance under County personnel policies. Additionally,

20  the County proffers that it properly rejected Plaintiff's grievance "presumably because a new procedure

21  and system was being implemented to handle such complaints." Specifically, the County argues that

22  because the contract between the courts and the union had expired, the TCEPGA provided the

23  mechanism for resolving Plaintiff's claims. However, to dismiss Plaintiff's claim against the County

24  based on the County's defense that it had no duty to process Plaintiff's grievance, the Court would have

25  to look beyond the four corners of Plaintiff's Complaint, which it cannot do in the context of a 12(b)(6)

26  motion. As it stands, Plaintiff has alleged that the County wrongfully refused to process her grievance

27  and thereby denied her of her right to due process. Further, although there is some ambiguity as to when

28  and if the County was Plaintiff's employer, Plaintiff has alleged that the County terminated her

**United States District Court**
For the Northern District of California

11

employment because she was engaging in conduct protected by the First Amendment.  Accordingly, Plaintiff has pled a cognizable Section 1983 claim against the County.

### b)    Defendants Superior Court and Mr. Jaynes

In their Motion, the Superior Court and Mr. Jaynes contend that Plaintiff's Section 1983 claim against them is barred by the Eleventh Amendment.  With respect to the Superior Court, the Ninth Circuit has recognized that "a suit against the Superior Court is a suit against the State, [and is therefore] barred by the Eleventh Amendment." *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987).  Accordingly, the Court grants the Superior Court's request to dismiss Plaintiff's Section 1983 claim against it.

With respect to Mr. Jaynes, however, the answer is not as straight-forward.  Specifically, Mr. Jaynes argues that because the Superior Court is an arm of the state, and because he was acting in his official capacity as CEO, he is entitled Eleventh Amendment immunity from suit.  The Court agrees with Defendant Jaynes that, to the extent that Plaintiff has sued him in his official capacity, he is immune from suit under the Eleventh Amendment.[11]  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State or its officials acting in their official capacities are "persons" under [Section] 1983.").  Accordingly, the Court will grant Mr. Jaynes's request to dismiss Plaintiff's Section 1983 claim against him in his official capacity.

Nevertheless, Plaintiff has also sued Mr. Jaynes in his individual capacity.  Generally, "state officials, sued in their individual capacities, are 'persons' within the meaning of [Section] 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under [Section] 1983 solely by virtue of the 'official' nature of their acts." *Hafer v. Melo*, 502 U.S. 21, 30 (1991).  Accordingly, Plaintiff's Section 1983 claim against Mr. Jaynes in his individual capacity survives.

### c)    WPR and Ms. Armanino

---

[11]Generally, "A functional approach governs the Eleventh Amendment's application to actions for money damages against state officials." *Id.*  The Eleventh Amendment bars suits against state officials, if "the state is the real, substantial party in interest." *Id.* (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)).  To make this determination, the Court "must look beyond the pleadings to determine whether a decree in this case would operate in fact against [the State]. If the judgment would actually run against the state treasury, the action is barred." *Id.*

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Defendants WPR and Ms. Armanino argue that Plaintiff's Section 1983 claim against them fails

2 as a matter of law.  First, WPR argues that Plaintiff has not alleged that it was acting under color of state

3 law.  In response, Plaintiff states that, "Defendant, WPR, as described in [Complaint paragraphs 9 and

4 40] acted under color of authority named in [Complaint paragraphs 37 and 39] and committed acts in

5 [Complaint paragraphs 40, 41, 42, 43, 45, 50]." (Resp. at 2.)  The Court has reviewed these paragraphs,

6 and finds that none of them allege or can be construed as alleging that WPR committed any actions

7 under color of state law that deprived Plaintiff of her federally-protected rights.  Accordingly, the Court

8 will dismiss Plaintiff's Section 1983 claim against WPR.

9    Next, Ms. Armanino argues that she is protected from Plaintiff's Section 1983 claim by Eleventh

10 Amendment immunity.  Based on the reasoning set forth above, the Court finds that Plaintiff's Section

11 1983 claim against Ms. Armanino in her official capacity is barred by the Eleventh Amendment.

12 However, Plaintiff's Section 1983 claim against Ms. Armanino in her individual capacity falls outside

13 the protection of the Eleventh Amendment.  The Court therefore denies Ms. Armanino's request to

14 dismiss Plaintiff's Section 1983 claim, at least as it is asserted against her in her personal capacity.

15        **2.    Section 1986 Claim**

16    In her Second Claim for Relief, Plaintiff asserts a claim for "Refusal to Prevent Interference with

17 Deprivation of Civil Rights" under 42 U.S.C. § 1986.  This section imposes liability on every person

18 who knows of an impending violation of § 1985,[12] and has the power to prevent or aid in preventing the

19 violation, but neglects or refuses to do so.  Each of the Defendants has moved to dismiss this claim on

20 various theories.

21    The County argues that Plaintiff's second claim for violation of 42 U.S.C. § 1986 fails because

22 Plaintiff has not asserted a claim for violation of 42 U.S.C. § 1985, which is required to maintain a claim

23 under § 1986.  Plaintiff, however, asserts that the County was in a position to prevent a conspiracy, and

24 was therefore negligent.  She argues that, because negligence is sufficient to maintain a claim under §

25 1986 claim, the Court should deny the County's Motion with respect to her § 1986 claim.  The Court,

26

27        [12]Section 1985 proscribes conspiracies to interfere with certain civil rights.  To assert a viable
claim under section 1985, the plaintiff must allege facts to support the allegation that the defendants
28 conspired together; "[a] mere allegation of conspiracy without factual specificity is insufficient."
*Karim-Panahi v. Los Angeles Police Dep't*, 839 F.3d 621, 626 (9th Cir. 1988).

13

1    however, agrees with the County.

2        "A claim can be stated under section 1986 only if the complaint contains a valid claim under

3    section 1985." *Karim-Panahi*, 839 F.3d at 626.  Because Plaintiff has not asserted a claim under § 1985,

4    she cannot maintain a claim under § 1986.  Consequently, the Court dismisses Plaintiff's Section 1986

5    claim against all Defendants.[13]

6            **3.      Violation of the Age Discrimination in Employment Act**

7        In her Third Cause of Action Plaintiff has asserted a claim for violation of the Age

8    Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623.[14]  She alleges that, "[b]y doing the

9    action complained of above, Defendant, County of Lake Superior Court[,] has discriminated against

10   Plaintiff on the basis of her age, over 40[.]"[15]

11       Defendant Superior Court argues that Plaintiff's claim for age discrimination is fatally flawed

12   because Plaintiff failed to exhaust her administrative remedies.  Specifically, it argues that Plaintiff

13   concedes in her Complaint that she has not received a right to sue letter from either the Department of

14   Fair Employment and Housing or the Equal Employment Opportunity Commission.  Thus, the Superior

15   Court argues that Plaintiff cannot maintain her claim because she has not exhausted her administrative

16   remedies.  However, unlike claims under Title VII, the ADEA does not require a claimant to first obtain

17   a right to sue letter before initiating a lawsuit.  Rather, 29 U.S.C. § 626(d) provides that, "No civil action

18   may be commenced by an individual under this section until 60 days after a charge alleging unlawful

---

20       [13]If Plaintiff intends to assert a viable claim under § 1986, she must sufficiently allege facts
21   constituting a conspiracy under § 1985.

22       [14]In their Motion to Dismiss and in their Supplemental Brief filed after oral argument,
     Defendants  Lake County Superior Court, Mr. Jaynes, Ms. Mallinen, and WPR proffer that Plaintiff's
23   Third Cause of Action is a claim under California's Fair Employment and Housing Act.  Reviewing
     Plaintiff's Complaint, she has identified it as a claim under the ADEA.  However, Plaintiff cites to
24   certain sections of the California Government Code in her claim.  Thus, as alleged, the Court construes
     Plaintiff's Third  Cause of Action as a claim for violation of the ADEA.  To the extent that Plaintiff
25   seeks to assert a separate claim for discrimination in violation of California's FEHA, she must amend
     her Complaint and specifically identify her claim as such.  Thus, the Court denies without prejudice
26   Defendants' challenges relating to any FEHA claim.

27       [15]The County and Defendants WPR, Armanino, and Jaynes have also moved to dismiss
     Plaintiff's age discrimination claim against them.  Reviewing Plaintiff's Complaint, she has only alleged
28   a discrimination claim against her employer, the Superior Court.  (*See* Compl. ¶¶ 66-68.)  If Plaintiff
     intends to assert such a claim against any Defendants in addition to the Superior Court, Plaintiff must
     seek leave to amend to specifically allege which Defendants she claims violated the ADEA.

discrimination has been filed with the Equal Employment Opportunity Commission." In her Complaint, Plaintiff alleges that she has filed such a charge with both the EEOC and California's Department of Fair Employment and Housing, this the Court rejects the court's argument.

The Superior Court also argues that Plaintiff has failed to allege sufficient facts to support her age discrimination claim. However, as Plaintiff correctly notes in her Opposition, she has alleged that she is over 40 years of age, and that she suffered an adverse employment action based on her age. These allegations, while minimal, are sufficient to put Defendant on notice of Plaintiff's ADEA claim. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002). The Court therefore declines to dismiss Plaintiff's ADEA claim against the Superior Court.

**C.     Plaintiff's State law claims**

**1.     Fourth Cause of Action: Retaliation for Employee's Political Activity**

In her Fourth Cause of Action, Plaintiff asserts that, "after she was refused membership in the recognized employee organization, Lake County Employees' Association, by the employees' union representatives appointed by the Defendant, employer . . . Plaintiff proceeded to organize her own non-profit organization, under 501(c)(3) to pay all agency shop fees required for continued employment under any new Collective Bargaining Agreement as yet unknown to Plaintiff." She further alleges that, between October 2002, and June 30, 2003, Mr. Jaynes "proposed policies and changes and engaged in labor negotiations that affected Plaintiff's terms and conditions of employment." Specifically, she alleges that, "Defendant by his conduct demonstrated that his new policy was to harass, discharge, and discriminate against terms and conditions of employment of any employee who engaged in protected activity in opposition." Thus, Plaintiff claims that "Defendants" violated Labor Code Sections 1101 and 1105.

**a)     Legal Standard**

Labor Code Section 1101 provides:

> No employer shall make, adopt, or enforce any rule, regulation, or policy:
>
> (a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office.
>
> (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees.

As used in Section 1101, "[t]he term 'political activity' connotes that espousal of a candidate or a cause, and some degree of action to promote the acceptance thereof by other persons." *Mallard v. Boring*, 182 Cal. App. 2d 390, 394 (Cal. Ct. App. 1960).

Similarly, Section 1102 states: "No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity." To enforce these provisions, Section 1105 provides: "Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter."

### b)   Defendants Superior Court and Mr. Jaynes

Unlike the other Defendants, there is no dispute that the Superior Court was Plaintiff's employer. Thus, it is subject to Sections 1101 and 1105. In its Motion, the Superior Court argues that Plaintiff's retaliation claim fails because Plaintiff has not alleged that she engaged in any political conduct that would be protected under Section 1101, or that the Superior Court engaged in any conduct somehow preventing her from, or interfering with her right to, participate in politics. Reviewing Plaintiff's Complaint, she has alleged that after she began to organize her own non-profit organization, she was harassed, discriminated against, and, ultimately, discharged. However, as the Superior Court notes, such activity does not constitute "political activity" under Section 1101 because it does not advocate a particular view or encourage support for a particular candidate. *See Smedley v. Capps, Staples, Ward Hastings & Dodson*, 820 F. Supp. 1227, 1230 n.3 (N.D. Cal. 1993) (noting that "the courts have traditionally interpreted [Section 1101] as being intended to defend employees engaged in traditional political activity from reprisal by their employer"); *Lockheed Aircraft Corp. v. Superior Court*, 171 P.2d 21, 25 (1946) (holding that Section 1101 concerned activities related to or connected with the orderly conduct of government and the peaceful organization, regulation, and administration of the government). Accordingly, the Court agrees with the Superior Court that Plaintiff has failed to state a cause of action for retaliation. The Court therefore dismisses Plaintiff's retaliation claim as to all Defendants.

### 2.   Fifth Cause of Action: Intentional Misrepresentation by Making Promises Without Intent to Perform

In her Fifth Cause of Action, Plaintiff asserts that from April 27 to May 25, 2004, "Defendants"

1   promised her that they would reinstate her employment, with the same title, status, salary, benefits, and

2   entitlements.  Specifically, Plaintiff alleges that "this promise was implied in the form of a  benefits

3   packet sent by the Defendants via certified mail to Plaintiff's home on May 5, 2004," which Plaintiff

4   accepted "by her act of completing the benefit packet and personally returning it to the Defendant(s),

5   employer, on May 11, 2004."  Plaintiff alleges that at the time Defendants made the promise, they

6   lacked the intent to perform, and that she "was unaware of Defendants' intention not to perform their

7   promise during the time that she relied upon them."  According to Plaintiff, she later discovered that at

8   the time Defendants made the promises, Defendants "had already 'raided' Plaintiff's office in an attempt

9   to obtain material to fire Plaintiff upon return."  Thus, when she returned to work on May 25, 2004, she

10  "was immediately escorted out of the building on an alleged performance based adverse action under

11  new policies created in her absence and placed on admin-leave."

12                          **a)      The County**

13      The County moves to dismiss Plaintiff's intentional misrepresentation claim against it on the

14  ground that Plaintiff has not alleged that the County was a party to any employment contract or promise

15  regarding reinstatement to her position with the Superior Court.  The Court agrees.  Plaintiff has not

16  alleged that the County made any promise that Plaintiff could return to work as a Superior Court

17  employee.  Further, because the County does not have such authority, this is not an allegation that

18  Plaintiff may cure by further pleading.  Accordingly, the Court will dismiss Plaintiff's intentional

19  misrepresentation claim against the County with prejudice.

20                          **b)      WPR and Ms. Armanino**

21      WPR and Ms. Armanino move to dismiss Plaintiff's intentional misrepresentation claim against

22  them because they were not parties to any agreement between Plaintiff and her employer regarding her

23  reinstatement after she was terminated.  Specifically, WPR argues that, "[i]t is clear from the face of the

24  Complaint . . . that WPR is *not* Plaintiff's employer, but rather a 'Contract Service Provider' for the

25  Superior Court."  Thus, it argues that Plaintiff's claim fails.  The Court agrees.  Accordingly, the Court

26  will dismiss this claim against WPR.

27      Ms. Armanino argues that Plaintiff's intentional misrepresentation claim against her fails

28  because officials of a public entity are immune from such claims under California Government Code

1    Section 820.2.  This Section provides:

2         [A] public employee is not liable for any injury resulting from his act or
         omission where the act or omission was the result of the exercise of the
3         discretion vested in him, whether or not such discretion be abused.

4    As Superior Court Manager, Ms. Armanino argues that she is a public employee under Section 820.02,

5    and is therefore entitled to governmental immunity for personnel decisions that are entrusted to her

6    judgment.  The Court agrees.  To the extent that Plaintiff is claiming that Ms. Armanino misrepresented

7    that Plaintiff would be reinstated to her position, such acts constituted a discretionary personnel action

8    within the scope of Ms. Armanino's authority.  Accordingly, she is protected from suit under Section

9    820.02.  The Court will therefore dismiss Plaintiff's intentional misrepresentation claim against Ms.

10   Armanino.

11                  **c)        The Superior Court and Mr. Jaynes**

12        The Superior Court and Mr. Jaynes urge the Court to dismiss Plaintiff's intentional

13   misrepresentation claim against because it fails as a matter of law.  Specifically, like Ms. Armanino, Mr.

14   Jaynes argues that he is entitled to governmental immunity from Plaintiff's intentional misrepresentation

15   claim.  The Court agrees.  Accordingly, it will dismiss Plaintiff's intentional misrepresentation claim

16   against Mr. Jaynes.

17        In its Motion, Defendants Superior Court and Jaynes also argue that, as the public entity that Mr.

18   Jaynes served, the Superior Court is "protected by the governmental immunity afforded under Section

19   820.02."  The Court agrees.  *See Sanborn v. Chronicle Publ'g. Co.*, 134 Cal. Rptr. 402, 414 (Cal 1976);

20   *Widdows v. Koch*, 263 Cal App. 2d 228, 238 (Cal. Ct. App. 1968).  Accordingly, the Court therefore

21   grants the Superior Court's request to dismiss Plaintiff's intentional misrepresentation claim against it.

22

23                  **3.        Sixth Cause of Action: Breach of Contract and Seventh Cause of Action:
                            Breach of Covenant of Good Faith an Fair Dealing**
24

25        In her Sixth Cause of Action, Plaintiff alleges that she and "Defendant" entered into an

26   employment contract "that was oral, written, and implied-in-fact," and which lasted through her nine

     and a half years of employment.  According to Plaintiff, "[t]he basic terms of the agreement were that
27
     [her] employment would be secure for as long as the company's personnel manual and policies
28
     disseminated to [her] were followed, that any complaint of harassment or retaliation would be

                                                    18

investigated and resolved promptly and fairly, that [she] would not be terminated or forced to quit without good cause, and Plaintiff having been hired on the State Personnel Local Agency Merit System would earn merit raise increases, longevity raise, retirement, and fringe benefits." She alleges that she accepted employment and performed according to the terms of the agreement, until Defendants prevented her further performance. Specifically, she alleges that "[b]eginning in about July 2003 and through October 2004, Defendants . . . breached the . . . employment agreement by failing to investigate and resolve Plaintiff's complaint of workplace harassment, hostile work environment, disparate treatment, and retaliation fairly and promptly." Additionally, she charges that "[o]n July 30, 2004, Defendants breached the . . . employment agreement by discharging Plaintiff without good cause and despite her continued satisfactory performance[.]"

Relatedly, in her Seventh Cause of Action, Plaintiff asserts a claim for breach of covenant of good faith and fair dealing. She alleges that Defendants "had the legal duty to act fairly and in good faith towards Plaintiff in connection with the employment agreement and the [TCEPGA]." (*Id.* at ¶90.) According to Plaintiff, "[s]ometime before June 30, 2004 and through July 30, 2004, Defendants . . . breached these duties imposed by law in connection with the employment agreement and the TCEPGA by failing to investigate and promptly resolve Plaintiff's complaint of workplace harassment, hostile work environment, disparate treatment, relation, and violation of the governing statutes within the TCEPGA by further retaliation of discharging Plaintiff with a dishonest and bad faith motive."

Defendants argue that Plaintiff's contract-based claims fail because public employment in California is not contractual in nature.[16] Thus, they argue that a public employee cannot state a claim against an employer for breach of an alleged employment contract or of the covenant of good faith and fair dealing. The Court agrees.

In California, "public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law." *Miller v. State of*

---

[16]As indicated above, the County joined in the other Defendants' arguments. Additionally, the County moves to dismiss Plaintiff's breach of contract claim on the ground that Plaintiff has not alleged that the County was a party to any employment agreement. The Court agrees. Because the alleged employment agreement was between Plaintiff and the Superior Court, the County could not be held liable for any breach of a contract to which it did not subscribe.

*Cal.*, 135 Cal. Rptr. 386, 389 (1977).  Accordingly, "[the California] Supreme Court has made it clear that civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing."  *Kim v. Regents of univ. of Cal.*, 95 Cal. Rptr. 2d 10, 12 (Cal. Ct. App. 2000).  Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing therefore fail as a matter of law.  The Court thus dismisses these claims against all Defendants without leave to amend.[17]

### 4.       Eighth Cause of Action: Defamation

In her Eighth Cause of Action Plaintiff alleges that Defendants "negligently, reckless, and intentionally caused excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community."  According to Plaintiff, "[t]hese false and defamatory statements included expressed and implied accusations that Plaintiff violated company policies; that she was such a poor performer, that she deserved disciplinary [sic] or had done a serious act of misconduct calling for her immediate removal; that she was incompetent; and was dishonest."

Each of the Defendants has moved to dismiss Plaintiff's defamation claim on various theories.  Reviewing Plaintiff's Complaint, she repeatedly alleges that "Defendants" engaged in certain conduct.  To date, Plaintiff has named five separate defendants.  Because she has failed to specify which Defendants made the purportedly defamatory statements, the Court is unable to assess the validity of Defendants' challenges.  More importantly, although a defamation claim does not require Plaintiff to meet any heightened pleading requirement, it also does not excuse Plaintiff from complying with the minimal notice pleading standard set forth in Federal Rule of Civil Procedure 8(a).  Here, it is impossible to determine which of the five Defendants Plaintiff is claiming made defamatory statements,

---

[17]In her Oppositions, Plaintiff indicates that she will amend her claims for breach of contract and breach of covenant of good faith and fair dealing "to correctly allege facts sufficient to state a claim related to a [b]ilateral contract for reciprocal services of Plaintiff's dual employment with Defendant, County of Lake.  Plaintiff will further amend to allege her employment with employer, Lake County Superior Court [and] C.E.O., was held by statute at all relevant times, entitling Plaintiff t Constitutional protection and guarantees, and that Plaintiff suffered deprivation under the color of authority in violation of those rights."  As indicated above, to the extent that Plaintiff seeks to assert contract-based claims based on the existence of an employment agreement, her claims are not cognizable under California law.  Thus, because her breach of contract and breach of covenant of good faith claims fail as a matter of law, no amendment will cure these claims.  Further, to the extent that Plaintiff seeks to amend her Complaint, she is advised that any amendment must comply with the procedures set forth in Federal Rule of Civil Procedure 15(a).

United States District Court
For the Northern District of California

when the statements were made, the form of the defamatory statements, or to whom the Defendant(s) made the statements. Indeed, in her Complaint Plaintiff acknowledges that she does not know when the purportedly defamatory publications were made, and fails to identify to whom they were published. Thus, the Court finds that Plaintiff's conclusory allegations fail to comply with the pleading standard of Rule 8(a) and fail to put Defendants on notice of what conduct Plaintiff claims gives rise to her defamation claim. The Court will therefore dismiss Plaintiff's defamation claim with leave to amend.[18]

### 5.        Ninth Cause of Action: Discharge in Violation of Public Policy

In her Ninth Cause of Action, Plaintiff alleges that "[b]y terminating Plaintiff as described in the preceding causes of action, Defendants and Does 1-50, [have] terminated Plaintiff in violation of the public policies of the United States and the State of California, as those policies are designed to prevent retaliation against, and discrimination against, employees[.]"

#### a) WPR and Ms. Armanino

WPR and Ms. Armanino move to dismiss Plaintiff's claim for discharge in violation of policy because: (1) it is barred by PERB's exclusive jurisdiction (except to the extent Plaintiff claims that her termination was based on age discrimination); (2) it is precluded as to WPR and Ms. Armanino because neither one was Plaintiff's employer; and (3) individual and non-employer defendants cannot be liable on a claim for wrongful termination. The Court finds the last argument dispositive. Under California law, "[o]nly an employer can be liable for tortious discharge, and fellow employees cannot be held accountable for tortious discharge on a conspiracy theory." *Jacobs v. Univ. Dev. Corp.*, 53 Cal. App. 4th 692, 704 (1997). Accordingly, because neither WPR nor Ms. Armanino were Plaintiff's employer, the Court grants their Motion to Dismiss with respect to Plaintiff's claim for discharge in violation of public policy.

#### b)        The County

The County has also moved to dismiss Plaintiff's claim for discharge in violation of public

---

[18]Should Plaintiff seek to amend her defamation claim, she must identify which of the Defendants made the allegedly defamatory statements. Merely alleging that "Defendants and Does 1-50, and each of them," will not suffice. Further, in order to sustain a viable defamation claim, Plaintiff must initially allege, and later prove, that the purported defamatory statement was published *to a third party. See Shively v. Bozanich*, 7 Cal. Rptr. 3d 576, 583 (Cal. 2003). Unless such publication occurred, Plaintiff cannot plead a claim for defamation.

United States District Court
For the Northern District of California

policy on the ground that, because the County was not Plaintiff's employer, it cannot be held liable under this theory. Because the Court cannot discern based on Plaintiff's Complaint if and when the County employed Plaintiff, it will deny the County's Motion to Dismiss Plaintiff's Ninth Cause of Action against it without prejudice.

### c) The Superior Court and Mr. Jaynes

Similarly, Mr. Jaynes urges the Court to dismiss Plaintiff's discharge in violation of public policy claim against him because he was not Plaintiff's employer. Because it is undisputed that Mr. Jaynes was not Plaintiff's employer, the Court grants his request to dismiss Plaintiff's Ninth Cause of Action against him. *See id.*

In their Motion, Defendants Superior Court and Mr. Jaynes also argue that, because Plaintiff has failed to establish a violation of any of the public policies she cites as underlying her claim, her claim for discharge in violation of public policy fails as a mater of law. The Court disagrees. Because Plaintiff has alleged a viable claim under the ADEA, dismissal of her wrongful discharge in violation of public policy claim is premature at this juncture. The Court therefore denies the Superior Court's Motion with respect to Plaintiff's wrongful discharge claim.

### 6.    Tenth Cause of Action: Intentional Infliction of Emotional Distress

In her Tenth Cause of Action, Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED"). She alleges that "Defendants and Does 1-50 as described throughout this Complaint, in particular, their discriminatory actions, were extreme and outrageous and beyond the bounds of common decency." As result of Defendants' conduct, Plaintiff alleges that she has sustained and continues to suffer emotional distress.

### a)      Legal Standard

Under California law, to state a cause of action for intentional infliction of emotional distress, a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *See Braunling v. Countrywide Home Loans, Inc.*, 220 F.3d 1154, 1158 (9th Cir. 2000); *Trerice v. Blue Cross of Cal.*, 209 Cal. App.3d 878, 883 (1989). To be "outrageous,"

conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized society.  *Id.*

"Conduct which exhibits mere rudeness and insensitivity does not rise to the level required for a

showing of intentional infliction of emotional distress."  *Braunling*, 220 F.3d at 1158.

### b)   The County

In its Motion, the County argues that the Court should dismiss Plaintiff's IIED claim against it

because Plaintiff has failed to allege extreme or outrageous conduct by the County.  Specifically, the

County argues that, "all that the County did was tell [P]laintiff that she could not file a grievance with

the County - presumably because a new procedure and system was being implemented to handle such

complaints.  This was not 'outrageous' as a matter of law."  Further, the County argues that Plaintiff was

never injured by the County's acts.  It points out that Plaintiff alleges that she filed an appeal and

prevailed.  Thus, the County contends that even if it was mistaken in telling Plaintiff that she could not

file a grievance, there was no harm as a result of that mistake.  The Court, however, disagrees.  Plaintiff

has alleged that the County denied her request to process a grievance and that it failed to prevent her

from being discriminated against in her role as Courthouse Safety Officer.  At the pleading stage, the

Court cannot say that the County's actions do not rise to a level sufficient to sustain an IIED claim.  The

Court therefore denies the County's Motion with respect to Plaintiff's IIED claim without prejudice to

the County re-alleging its challenge based on a full evidentiary record.

### c)   WPR and Ms. Armanino

Defendants WPR and Ms. Armanino argue that Plaintiff's IIED claim fails as a matter of law,

and is therefore subject to dismissal.  Particularly, they argue the IIED claim: (1) is barred by PERB's

exclusive jurisdiction; (2) is precluded as to both Defendants because neither Defendants is Plaintiff's

employer; (3) is barred as to WPR because the only conduct attributed to WPR is absolutely privileged

under California Civil Code Section 47(b); and (4) is barred because Plaintiff's exclusive remedy for

this claim is under worker's compensation law.

As to Defendant's first argument, the Court fails to see how Plaintiff's tort claim for IIED falls

within the scope of claims relating to the wages, hours, or terms and conditions of Plaintiff's

employment, or otherwise constitutes a violation of the TCEPGA.  Accordingly, the Court finds that

PERB does not have exclusive jurisdiction over it.  Second, the fact that neither WPR or Ms. Armanino

United States District Court

For the Northern District of California

1    was Plaintiff's employer does not preclude Plaintiff from asserting an IIED claim against them.

2    Particularly, the basis of Plaintiff's IIED claim appears to extend beyond the act of her termination.

3    The Court also rejects Defendants' argument that Plaintiff's exclusive remedy is workers'

4    compensation law.  To the contrary, "a plaintiff *can* recover for infliction of emotional distress if he or

5    she has a tort cause of action for wrongful termination in violation of public policy or wrongful

6    termination in violation of an express statute because [in such cases], emotional distress damages are

7    simply a component of compensatory damages." *Phillips v. Gemini Moving Specialists*, 74 Cal.Rptr.2d

8    29, 38 (Cal Ct. App. 1998).  Here, Plaintiff has stated a viable wrongful termination claim, which may

9    support her IIED claim against the Superior Court.

10    However, because Plaintiff has failed to plead sufficient facts identifying what conduct

11    Defendant WPR engaged in that amount to extreme or outrageous conduct, the Court will grant WPR's

12    Motion to Dismiss Plaintiff's IIED claim against it.[19]  As to Ms. Armanino, however, because Plaintiff

13    still has stated a viable claim against Ms. Armnanino in her personal capacity, the facts supporting such

14    claim may also support an IIED claim against her, as well.  Accordingly, the Court denies without

15    prejudice Ms. Armanino's request to dismiss Plaintiff's IIED claim against her.

16                              **d)    The Superior Court and Mr. Jaynes**

17    The Superior Court and Mr. Jaynes also argue that the Court should dismiss Plaintiff's IIED

18    claim because: (1) it is within PERB's exclusive jurisdiction; (2) because Defendant Jaynes is not

19    Plaintiff's employer; and (3) because Plaintiff's exclusive remedy is under workers' compensation law.

20    For the reasons discuss above, the Court rejects each of these arguments.

21    **III.    Conclusion**

22    For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the

23    Defendants' Motions to Dismiss as follows:

24    With respect to the County of Lake's Motion to Dismiss (Doc. #17), the Court **DENIES** its

25    request to dismiss Plaintiff's Section 1983 claim, discharge in violation of public policy claim, and

26    intentional infliction of emotional distress claim.  The Court **GRANTS** the County's request to dismiss

27

28        [19]If Plaintiff seeks to assert an IIED claim against WPR in her Amended Complaint, Plaintiff
must identify what conduct by WPR gives rise to an IIED claim.

1   all other claims.

2        With Respect to Defendant WPR's Motion to Dismiss (Doc. #11), the Court **GRANTS** its

3   request to dismiss all of Plaintiff's claims against it.

4        As to Defendant Armanino, the Court **GRANTS** her Motion (Doc. #11) with respect to

5   Plaintiff's Section 1986 claim; ADEA claim; retaliation claim; intentional misrepresentation claim;

6   breach of contract claim; breach of covenant of good faith and fair dealing claim; defamation claim; and

7   claim for discharge in violation of public policy.  It **DENIES** Defendant Armanino's Motion with

8   respect to Plaintiff's Section 1983 claim in her personal capacity and Plaintiff's intentional infliction

9   of emotional distress claim.

10        As to Defendant Jaynes the Court **GRANTS** his Motion to Dismiss (Doc. #20) Plaintiff's

11   Section 1986 claim; ADEA claim; retaliation claim; intentional misrepresentation claim; breach of

12   contract claim; breach of covenant of good faith and fair dealing claim; defamation claim; and claim for

13   discharge in violation of public policy.  It **DENIES** Defendant Jaynes's Motion with respect to

14   Plaintiff's Section 1983 claim in his personal capacity and Plaintiff's intentional infliction of emotional

15   distress claim.

16        As to Defendant Superior Court the Court **GRANTS** its Motion to Dismiss (Doc. #20) Plaintiff's

17   Section 1983 claim; Section 1986 claim; breach of contract claim; breach of covenant of good faith

18   claim; retaliation claim; and defamation claim.  It **DENIES** the Superior Court's Motion to Dismiss with

19   respect to Plaintiff's ADEA claim; discharge in violation of public policy claim, and intentional

20   infliction of emotional distress claim.

21        Further, Plaintiff is granted leave to amend with respect to her Section 1986 claim, her

22   defamation claim, and her IIED claim against WPR to cure the deficiencies outlined in this Order.

23   Plaintiff shall file any amended complaint <u>within 20 days of the filing date of this Order</u>.

24

25   **IT IS SO ORDERED.**

26

27   Dated:       12/12/2005

28                                      MARTIN J. JENKINS
                                       UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California